## STATE v. MEHAFFEY.

### (Filed May 12, 1903.)

1. RAPE—*Instructions—Assault With Intent to Commit Rape—Intent.*

   In the trial of an indictment for an assault with the intent to commit a rape a requested instruction that rape is a most detestable crime and that the heinousness of the offense may transport the jury and judge with so much indignation that they may be overhastily carried on to a conviction on insufficient evidence was properly refused.

2. INSTRUCTIONS—*Trial Judge—Prayers for Instructions.*

   The trial judge is not required to give instructions in the very words in which they are requested.

3. EVIDENCE—*Sufficiency of Evidence—Rape—Assault with Intent to Commit Rape.*

   There is sufficient evidence in this case to be submitted to the jury as to whether the accused made the assault with the intent to commit rape.

4. RAPE—*Assault with Intent to Commit Rape—Intent.*

   If at any time during an assault by a man on a woman he has an intent to ravish her, he is guilty of an assault with intent to commit a rape.

5. CONTINUANCES—*Supreme Court—Appeal.*

   An appeal in a criminal action will not be continued in the supreme court for the reason that a civil action for the same offense is pending in the superior court.

   DOUGLAS, J., dissenting.

INDICTMENT against J. T. Mehaffey, heard by Judge *B. F. Long* and a jury, at February Term, 1903, of the Superior Court of CATAWBA County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *W. C. Feimster,* for the State.

*L. L. Witherspoon* and *W. B. Gaither,* for the defendant.

CLARK, C. J.   Indictment for assault with intent to commit rape.   There are five exceptions, three of which are to the refusal to charge as prayed, and the other two are to the charge.   The court gave the following instructions at the request of the defendant:

1.   That in order to convict for an assault with intent to commit rape, the jury must be satisfied, not only that the prisoner intended to gratify his passions on the prosecutrix, but that he intended to do so at all events, and notwithstanding any resistance on her part.

2.   It is not proof of guilt merely that the facts are consistent with guilt; they must be inconsistent with innocence. It is neither charity nor common sense nor law to infer the worst intent which the facts will admit of; the reverse is the rule of justice and law.   If the facts will reasonably admit the inference of an attempt, which, though immoral, is not criminal, we are bound to infer that intent.

3.   A conviction of an assault with intent to commit rape by force is not warranted by proof that the defendant against the will of the female upon whom the crime is charged to have been committed, indecently fondled her with intent to induce her thereby to submit to his embrace.   It must appear that his intent was to accomplish his purpose by force and against her will and at all events, notwithstanding any resistance on her part.

The defendant further requested the following instruction: "4.   The crime which is charged in the bill that the defendant intended to commit is a most detestable crime; the heinousness of the offense may transport the jury and even the judge with so much indignation that they may be over-hastily carried on to a conviction on insufficient evidence. · Blk Com., 215."   The defendant excepts to the court not using this exact phraseology, but the above was not laid down by Mr. Justice Blackstone as substantive law nor as a consecrated

formula for instructions to the jury. All that the defendant was entitled to was proper caution, which appears fully throughout the charge, and in the above prayers that were given; and besides, his Honor in conclusion cautioned the jury: "It is your duty, gentlemen of the jury, to review this evidence without bias or prejudice, calmly and deliberately, and endeavor to ascertain the truth. If there has been anything said by counsel in the heat of debate and in the ardor of argument calculated to prejudice the cause of the State or the cause of the defendant, it is your duty to dismiss that part of the argument and consider only such argument as assists you to determine what the facts are in this case, and the law as given to you by the court"—and much more to same effect. The judge is not required to give an instruction in the very words asked. *State v. Hicks,* 130 N. C., 705, and cases there cited.

The fifth prayer for instruction was: "Considering the evidence offered by the State in this case it is not sufficient to authorize the jury in rendering a verdict of guilty of an assault with intent to commit rape as charged in the bill of indictment." This was properly refused. The intent is necessarily an inference to be drawn from the defendant's acts, and it must be drawn by the jury and not by the judge, when there is any evidence. The prosecutrix, a young girl barely fourteen years of age, was an employee of the defendant, a mature man of 54, who employed attention, gifts of money and association with her, which the evidence tended to show was with a design to have carnal intercourse with her. The evidence also tended to show that failing to seduce her by these means he sought a retired place and opportunity to gratify his passions at all events, where her outcries were heard only by her younger sister, who had been working with her in the field; that she was a girl of good character and made no assignation with him; that he sent her

to the cotton house to empty some baskets; that he went in behind her, closed the door, and when she started out he jerked her down, put his hand on her private parts, also caught her in his arms and felt her breasts, he then put his hands where his pants unbuttoned, she screaming and crying and trying to get loose, her little sister, who was the only person near by, testifies that she heard the outcries; the prosecutrix says she was screaming as loud as she could, crying and trying to get away; that the defendant got his finger inserted in her person twice; that finally for a few minutes, the defendant desisted and she does not know why, unless because she was crying and screaming so loud. Whether he desisted for that reason, or because at his age he could not accomplish his purpose after so vigorous an oppositon, or because he was physically unable to overcome her opposition, or because he did not intend to have intercourse with her by force, was a matter for the jury alone, and was properly left to them in connection with all the other evidence in the case.    *State v. Matthews,* 80 N. C., 417; *State v. Horne,* 92 N. C., 805; 53 Am. Rep., 442; *State v. Kiger,* 115 N. C., 746; *State v. Finger,* 131 N. C., 781.    It is true he desisted, that is to say, he did not succeed in having sexual intercourse with the girl. If he had, he would have been on trial for the capital felony and not for the intent.    But his failure is not conclusive of the absence of intent, so that the court should not have charged the jury as prayed that he did not have such intent.    If his purpose was only seduction, why did he persist in using force after her tears and outcries and struggles had showed that she would not consent.    If he at any time during the assault (which the defendant admits) had such intent he was guilty, no matter what caused him to abandon his purpose.    There was other evidence, as the attempt of the defendant afterwards to buy the silence of the prosecutrix and his admission of illicit intercourse with another girl.    His intent could only

be found by a jury, and the three instructions above set out given at the request of the defendant, and the judge's charge also fully instructed them as to what the nature of the intent must have been.

The offense charged is the attempt to have carnal knowledge of the prosecutrix forcibly and against her will. Shutting the door behind her and jerking her down when she attempted to go out was evidence of force, putting his hand on her private parts and the other hand where his pants unbuttoned was evidence of an intention to have carnal intercourse and his persisting in spite of her screams and struggles was evidence to show his intent to succeed against her will. Of the sufficiency of such evidence the jury alone could judge. This evidence can scarcely be said to look like seduction. The failure of defendant to accomplish his purpose is not, as a matter of law, conclusive that he did not intend to succeed. As already said, there were several reasons, either of which may have prevented him, from being now on trial for the capital offense.

The defendant also excepted to the charge because the judge instructed the jury: "But if you find there was no assault upon the prosecutrix with intent to ravish as alleged, and above explained, and if you further find that he never committed an assault upon her amounting to a simple assault as above explained, then your verdict should be not guilty." This was substantially the sixth prayer asked by the defendant, and the only real objection is that it was too favorable to the defendant, for his own testimony admitted the assault.

The last exception that "The court failed to collate the evidence and bring it together in one view on each side with such remarks and illustrations as would properly direct the attention of the jury to each material matter in issue," is equally without merit. The charge is sent up and is a very full, careful, able and just presentation of the contentions

STATE *v.* MEHAFFEY.

of the parties and of the law applicable to each phase of the facts as the jury might find them to be.

At the opening of the case in this court, the defendant moved for a continuance on the ground that a civil action was pending and it might prejudice the verdict in that case if the verdict and judgment in this should be affirmed. There is no precedent to justify such motion, and we know of no reasoning which would have justified granting it. Should an appeal in a criminal case be held up for such reason, the State might be prevented several years from enforcing justice till the appeal in a civil case should get here. Should an appeal in a civil case also be held up till a criminal action is disposed of? If both cases must be disposed of in this court at the same term, the same would be true in the court below with great inconvenience to the administration of justice, and would be impracticable also for the further reason that in many counties civil and criminal business is tried at separate terms, and even when tried at the same term one case must be tried before the other. The opinion in this case, so far as it refers to the facts, can not be evidence in the trial of the civil action, and the fact of the verdict in this case, if the appeal were held up by a continuance, would be, if it gets to the knowledge of the jury, as effective as our affirmation on appeal that the judge committed no error of law in the trial, which is the only matter before us. We notice the matter, as the motion is a novelty in this court, and is without merit to sustain it.

Affirmed.

MONTGOMERY, J. I am compelled to concur in the opinion of the court because the trial was regularly conducted, and no fault can be found with any of the rulings of his Honor. But I feel constrained to say that the evidence, in my opinion, did not justify the verdict.

DOUGLAS, J., dissenting. The grossly indecent nature of

State *v.* Mehaffey.

the assault and my personal feeling towards any one who would betray or abuse a child, make me hesitate to dissent from the opinion of the court, and yet as a naked question of law I see no evidence that the defendant intended to ravish. Bad as the facts are, they are all consistent with his innocence of the grave crime with which he is charged. From the State's testimony alone, it seems that he had the girl in his power, and that he desisted without any outside interruption and without any actual attempt upon her person. There is no evidence that his clothing was unbuttoned, or that he was prepared to complete the crime. His fondling the girl would itself tend to prove that his purpose was persuasion. I do not mean to say that he was innocent of all crime. He was clearly guilty of an aggravated assault and should be punished accordingly, but he should not be subjected to the terrible consequences of so heinous a crime as that of which he has been convicted without competent evidence of his guilt. Seven years in the penitentiary to one of his age may be a life sentence, and in any event a conviction of attempt to commit what is generally regarded as the highest crime known to the law, fixes upon him the life long brand of infamy. Nor will he be the only sufferer, as even the innocent of kindred blood will share in his shame. In our detestation of the crime, we should not lose sight of the fearful injustice that would result from an unjust conviction.